Filed 9/24/25  P. v. Veal CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LAUREN ASHLY VEAL,<br><br>        Defendant and Appellant. | A171147<br><br>(Solano County<br>Super. Ct. No. F23-00058) |

Lauren Ashly Veal (appellant) challenges multiple probation conditions imposed by the court following her no contest plea to one count of a lewd or lascivious act upon a child under the age of 14 (Pen. Code, § 288, subd. (a)). We modify or strike and remand all of the challenged conditions.

BACKGROUND

Appellant pled no contest to one count of lewd or lascivious acts with three victims under the age of 14.  According to the preliminary hearing testimony, over a period of several years, appellant sexually touched and engaged in other inappropriate sexual behavior with three of her children when they were under 14 years old.  The trial court sentenced appellant to three years' probation, issued a no-contact order and a criminal protective order protecting the victims, and imposed a number of probation conditions.

1

DISCUSSION

I.   *Legal Background*

"[A] sentencing court has 'broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1.' " (*People v. Moran* (2016) 1 Cal.5th 398, 403.)  However, "the types of conditions a court may impose on a probationer are not unlimited. . . . 'Generally, "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" [Citation.]  This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term.  [Citations.]  As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality.' " (*Ibid.*)[1]

In addition, "[a] probation condition . . . may be challenged as unconstitutionally vague or overbroad.  [Citation.] . . . A restriction is unconstitutionally vague if it is not ' "sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." ' [Citation.]  A restriction failing this test does not give adequate notice—'fair warning'—of the conduct proscribed.

---

[1] "As a rule, failure to object to a probation condition in the trial court on standard state law or reasonableness grounds forfeits the claim for appeal." (*People v. Moran, supra*, 1 Cal.5th at p. 404, fn. 7.)  Defense counsel below objected to all of the challenged conditions, and the People do not contend appellant forfeited any of the reasonableness challenges raised on appeal.

[Citations.] A restriction is unconstitutionally overbroad, on the other hand, if it (1) 'impinge[s] on constitutional rights,' and (2) is not 'tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation.' [Citations.] The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

"Generally, we review the court's imposition of a probation condition for an abuse of discretion. [Citations.] However, we review constitutional challenges to a probation condition de novo." (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

II. *Challenged Conditions*

　　A. *Conditions Relating to Online Activity*

　　　　1. *Additional Background*

The trial court imposed a number of conditions relating to appellant's online activities. Appellant challenges three of those conditions.

The first condition challenged by appellant provides that she is "not to access or subscribe to any kind of internet service, bulletin board, local bulletin board service -- they used to be called BBS services -- from any electronic device for any reason unless approved in writing by your probation officer." The parties agree that this condition prohibits appellant from using the internet absent prior approval from her probation officer. We will refer to this as the Internet Condition.

The second challenged condition provides that appellant "[s]hall not possess any device that has access to the internet or photograph, video or

3

record audio which may include, but is not limited to, smart phones, []tablets, laptop, desktop computers, cameras, video gaming systems, internet ready TV/DVD/Blu[-r]ay players without the recommendation of the therapist and permission of the Probation Officer." (Boldface omitted.) The trial court emphasized that "[s]mart phones can be possessed with permission of your therapist and your probation officer." We will refer to this as the Device Condition.

The third challenged condition provides that appellant "shall not use social media or any other computer media tools that allow people to create, share, or exchange information, pictures, videos, virtual communities and/or networks, or participate in social networking, such as Facebook, Instagram, or Snapchat without permission of her therapist and probation." We will refer to this as the Social Media Condition.

The trial court also imposed the following conditions relating to online activity, which appellant does not challenge:

"[Appellant] shall disclose all email addresses and social network accounts to probation and provide passwords to any of those accounts within five days."

"She shall not knowingly possess or use any form of encryption software or password protection designed to delete, conceal, protect, or secure computer files or electronically stored data on media, including hard drives, optical media, and removable storage devices, from access to probation or any law enforcement agency."

"She shall not clean or delete browsing internet activity and history unless approved in writing by probation."

"She shall not knowingly engage in any real-time communication over the internet with anyone who identifies himself or herself as a minor or

4

anyone with whom the defendant knows to be a minor, including video calling services, chat, and instant messaging, unless the court or probation has allowed the defendant to communicate with that minor."

"She shall not knowingly engage in any communication over the internet, including electronic mail, with anyone concerning the current or planned possession, production, preparation, publication, exchange, exhibition, or distribution by the defendant or any party to that communication of any matter depicting a person under the age of 18 years of age engaging in or personally simulating sexual conduct as described in Section 311.4 of the Penal Code."

"She shall submit to immediate search and seizure of all electronic devices under her control, i.e.[,] computers, memory storage devices, electronic mail, internet accounts, data and information contained therein with or without reasonable cause by probation or law enforcement. This would exclude online medical accounts and financial or banking accounts."

　　　　2.　　*Legal Background*

A number of cases have considered probation or parole conditions restricting online activity.[2] *Stevens*, *supra*, 119 Cal.App.4th 1228, one of the earliest such cases, issued more than 20 years ago. In *Stevens,* the defendant pled guilty to lewd conduct upon a child under the age of 14, and a search of his "home computer revealed it was not used to download child pornography, to contact the victim, or to commit a crime." (*Id.* at p. 1231.) Upon his release from prison, one of his parole terms provided, " 'You shall not possess

---

[2] "The criteria for assessing the constitutionality of conditions of probation also applies to conditions of parole." (*In re Stevens* (2004) 119 Cal.App.4th 1228, 1233 (*Stevens*).)

5

or have access to computer hardware or software including the internet.' " (*Ibid.*)

Stevens reasoned that "[s]ome child molesters reach their victims through the Internet" and therefore there is a "legitimate[] concern[] that a released child molester's unfettered access to a computer might result in criminal conduct." (*Stevens*, *supra*, 119 Cal.App.4th at pp. 1236, 1239.) However, the court recognized that " '[c]omputers and Internet access have become virtually indispensable in the modern world of communications and information gathering.' " (*Id.* at p. 1234.) " 'The architecture of the Internet, as it is right now, is perhaps the most important model of free speech since the founding [of the Republic],' " and "[r]estrictions upon access to the Internet necessarily curtail First Amendment rights." (*Id.* at pp. 1236, 1235.)

The court held that in the case before it, the probation condition was unreasonable because "the broad prohibition on use of the computer and Internet bore no relation to Stevens's conviction for child molestation and imposed a greater restriction of his rights than was reasonably necessary to accomplish the state's legitimate goal." (*Stevens*, *supra*, 119 Cal.App.4th at pp. 1231, 1239.) The court noted that narrower conditions were available, for example, "[a] focused restriction could be enforced by unannounced inspections of material stored on Stevens's hard drive or his removable disks," or by "the implementation of monitoring software which automatically generates an e-mail to the parole officer should the parolee engage in an illegal use of his computer." (*Id.* at p. 1239.)

In *In re Hudson* (2006) 143 Cal.App.4th 1 (*Hudson*), the defendant pled to lewd conduct with a child under the age of 14 and was sentenced to one year in county jail and probation. (*Id.* at pp. 4–5.) Although online activity was not involved in the underlying offense, while on probation, "a probation

officer conducting a search of Hudson's residence reported that Hudson quickly logged off a computer when the officer entered." (*Id*. at p. 5.) More than a year later, probation officers seized the defendant's computer but "were unable to access the computer's hard drive because it was encrypted" and the defendant "refused to provide the password for his computer to the police." (*Ibid*.) The defendant was subsequently convicted of two counts of misdemeanor molesting a child under the age of 18 after he had "taken photographs of two young boys that lived next door and had displayed these photographs on his computer." (*Ibid*.) His probation was revoked and he was sentenced to prison. (*Ibid*.) Upon his release, a special parole condition was imposed "that prohibited him from possessing or having access to computers, the Internet, or camera equipment absent permission from" his parole officer. (*Id*. at p. 4.)

The Court of Appeal upheld the condition even though the defendant's "first offense did not involve a computer," finding *Stevens* "distinguishable in that the authorities in *Stevens* were able search his computer and verify that he had not used it to further his criminal conduct. Because Hudson deliberately prevented the authorities from searching his computer while he was on probation, similar verification was not available to the authorities in this case. Accordingly, we find the special condition is related to Hudson's offense and is reasonably related to deterring future criminality." (*Hudson*, *supra*, 143 Cal.App.4th at pp. 10–11, fn. omitted.) The court also reasoned that, "unlike the condition that was at issue in *Stevens*, the special condition here is not a blanket prohibition. Hudson will be allowed to use a computer and access the Internet if he first obtains permission from [parole officers]. . . . Parole officers must exercise a certain amount of discretion and

7

we will not assume that [they] will unreasonably withhold permission for legitimate computer and Internet usage." (*Id.* at p. 11.)

In *People v. Pirali* (2013) 217 Cal.App.4th 1341 (*Pirali*), child pornography was found on the defendant's computer. (*Id.* at p. 1344.) Following the defendant's no contest plea to felony possession of child pornography, the court imposed the following probation condition: " 'You are not to have access to the Internet or any other on-line service through use of your computer or other electronic device at any location without prior approval of the probation officer.' " (*Ibid.*)

The defendant forfeited a reasonableness challenge but the Court of Appeal considered his constitutional challenges. (*Pirali, supra*, 217 Cal.App.4th at p. 1347.) Like *Stevens, Pirali* "note[d] that access to computers and the Internet have been recognized by courts as increasingly important" and that "certain restrictions on 'access to the Internet necessarily curtail First Amendment rights.' " (*Pirali*, at p. 1348.) The court nonetheless held the condition was not overbroad: "Here, like the parole condition contemplated in *Hudson*, defendant is not faced with a blanket prohibition. The probation condition clearly grants defendant the ability to access the Internet on his computer and other electronic devices so long as he obtains prior permission from his parole officer. This makes the probation condition distinguishable from the parole condition discussed in *Stevens* . . . ." (*Pirali, supra*, 217 Cal.App.4th at p. 1350.)

In *People v. Salvador* (2022) 83 Cal.App.5th 57 (*Salvador*), the defendant pled no contest to felony false imprisonment and misdemeanor sexual battery in incidents involving two minor victims and one 18-year-old victim. (*Id.* at pp. 60–61.) The defendant did not meet the victims online, but did " 'exchange social media messages with the victims.' " (*Id.* at pp. 61–62.)

The trial court imposed probation conditions prohibiting the defendant from using the internet or social media absent prior approval from his probation officer. (*Id*. at pp. 60–61.)

The court held the social media condition was reasonable: "Because Salvador used social media to text with the victims, the nexus to this condition, while attenuated, is sufficiently established such that imposition of the condition is not an abuse of discretion under the *Lent* test." (*Salvador*, *supra*, 83 Cal.App.5th at p. 65.) It further held the social media condition was not overbroad: "Any burden on Salvador's use of social media is reasonably tempered by his ability to obtain prior approval from the probation officer. And the use of social media is not so necessary to the activities of daily living that this requirement would unduly burden Salvador's rights." (*Id*. at p. 66.)

However, the court held the internet access condition was overbroad, distinguishing the case before it from *Pirali*: "First, there is nothing in the record to support a restriction on Internet access more generally, as compared with the restriction limited to social media. In *Pirali*, the defendant accessed pornography on his computer, materials which are distributed by means of accessing websites through the internet. Here, the factual nexus was Salvador's use of social media to contact the victims, not his access to materials on any other part of the Internet. The general restriction against Internet access thereby sweeps far more broadly than necessary to serve the purposes of the condition—preventing or deterring contact with minors for sexual purposes." (*Salvador*, *supra*, 83 Cal.App.5th at pp. 66–67.)

The court continued: "Second, we decided *Pirali* in 2013. Since that time, the Internet has become even more central and commonplace in the

9

lives of ordinary people; it is now practically unavoidable in daily life. Many more people today use the Internet to work from home, follow the news, or conduct business and commercial transactions such as banking and paying bills. No valid purpose is served by preventing Salvador from engaging in the kinds of Internet access that have become common and ubiquitous—e.g., performing work-related tasks, accessing or commenting on news sites, or conducting commercial or business transactions in ways that require engaging in protected speech. We conclude the limitation we relied on in *Pirali*—that the probationer could still use the Internet by obtaining prior approval from his probation officer—is not adequate here. Access to some part of the Internet is so necessary and frequent as a part of daily life that it may become unduly burdensome to obtain a probation officer's approval for every use of it. With respect to some offenses—e.g., possession or distribution of child pornography, as in *Pirali*—such a burdensome condition might be justified or necessary. But in this case, it is not." (*Salvador*, *supra*, 83 Cal.App.5th at p. 67.)

Finally, the court found that "conditions restricting access to social media and permitting law enforcement to search Salvador's electronic devices for communications over social media are adequate to achieve the legitimate purposes of the conditions." (*Salvador*, *supra*, 83 Cal.App.5th at p. 67.)

Recently, in *People v. Bray* (2025) 112 Cal.App.5th 494 (*Bray*), "thousands of image and video files of child pornography involving minors as young as five years old" were found on the defendant's devices, and the defendant "admitted to the investigating officer that he came into possession of child pornography 'through various media platforms and through torrent web browsers, Megalinks, and private online chat rooms.' " (*Id.* at p. 498.) One of the probation conditions imposed by the court provided, "You shall not

10

knowingly access the Internet or any other online service other than chase.com through the use of a computer or other electronic device at any location, including any place of employment, without prior approval of the probation officer." (*Id.* at p. 499.)

The court held the condition unconstitutionally overbroad: "While we do not hold that a blanket Internet prohibition can never be appropriate, we continue to agree with *Salvador* that the Internet today is so enmeshed with society and day-to-day life that such a prohibition that is not narrowly and carefully tailored will be overbroad and restrict a probationer's life in ways that are not sufficiently connected to the goal of rehabilitation. [¶] In this instance, the Internet prohibition would prevent Bray not only from performing any work that involves the Internet, but even from applying for jobs, whether the jobs involve the Internet or not.  Bray would have difficulty filing taxes, making appointments, or even just sending and receiving e-mails.  Although Bray could request exceptions from the probation officer, the fact that this would be necessary on a regular (and perhaps daily) basis only serves to further illustrate the wide-ranging and overbroad nature of the condition.  The condition would place an undue burden both on Bray and on the probation officer." (*Bray*, *supra*, 112 Cal.App.5th at pp. 504–505, fns. omitted.)

The court acknowledged that the defendant "used the Internet as the instrumentality to commit this crime," but held a narrower condition would be effective, "[f]or example, the condition could be drafted to permit Bray identified nonrecreational uses, or prohibit Bray from visiting websites involving children, entering chat rooms, or accessing file-sharing platforms (all which Bray admitted were involved in the commission of this crime)." (*Bray*, *supra*, 112 Cal.App.5th at p. 505.)  Further, "[t]he trial court ordered

11

many unchallenged conditions that would ensure Bray's compliance with those more specific orders including a prohibition on accessing social media and a waiver of his rights to privacy on all of his electronic devices, including providing passwords and maintaining search history." (*Ibid.*)

### 3. *Analysis*

The record reveals no connection between appellant's crimes and the internet: the victims were appellant's own children and the criminal conduct took place while they resided with appellant. There is no indication that appellant communicated with the victims over the internet, on social media or otherwise. This significantly distinguishes this case from those in which courts upheld conditions prohibiting online activity, and even distinguishes it from some that struck such conditions.

The People argue the challenged conditions are nonetheless reasonably related to preventing appellant's future criminality and are not overbroad. The People argue that appellant's "inappropriate sexual behaviors may permeate into her internet usage now that she lacks a consistent victim pool in her own home" and, relying on *Hudson* and *Pirali*, emphasize that the conditions permit her to seek prior approval from her probation officer. The People argue that the Social Media Condition also ensures that appellant will not "visit her children's public social media pages."

We have little difficulty concluding the Internet Condition and Device Condition are unconstitutionally overbroad.[3] There is no connection whatsoever between appellant's criminal conduct and internet activity or internet-connected devices. We agree with *Salvador* and *Bray* that appellant's ability to obtain prior approval from her probation officer is not

---

[3] We therefore need not and do not decide whether, as appellant also contends, the conditions are unreasonable and/or unconstitutionally vague.

sufficient to narrow the blanket prohibitions here in light of the ubiquitous nature of the internet in modern daily life. The cases relied on by the People that hold otherwise—*Hudson* and *Pirali*—were not only decided more than a decade ago, but also involved a defendant who either engaged in deliberately evasive conduct when probation officers attempted to search his computer or whose underlying offense involved online activity.

The Social Media Condition presents a somewhat closer case, as social media specifically is not as central to everyday life as internet access generally. Nonetheless, social media is broadly used for communication, entertainment, and information, and there is no record evidence that any aspect of appellant's conduct involved social media. A blanket prohibition on social media uses too broad a brush, and the ability to seek prior approval from her probation officer is too burdensome in light of the facts of this case.

To be sure, the trial court indisputably has legitimate concerns, including preventing appellant from contacting minors online, ensuring appellant does not attempt to contact the victims online, and prohibiting appellant from seeking out child pornography. However, other conditions— not challenged by appellant—target these concerns. Appellant is prohibited from any online communication with minors and any online communication relating to depictions of minors engaging in sexual conduct. Appellant is prohibited, by both an unchallenged probation condition and the criminal protective order, from contacting the victims by electronic or other means. And several unchallenged conditions ensure her probation officer can enforce these prohibitions: appellant must provide probation with all her email addresses, social media accounts, and passwords; must submit to search and seizure of all electronic devices (excluding only her medical and financial accounts); and cannot delete her internet history or use encryption software.

13

To the extent these conditions do not sufficiently address the legitimate concerns targeted by the Internet Condition, Device Condition, and Social Media Condition, the trial court can impose more narrowly tailored prohibitions on remand.

B.     *Remaining in the Presence of Minors*

The trial court imposed the following condition: "[Appellant] shall not remain in the presence of or attempt to contact by any method any person under the age of 18 without approval in advance and in writing by probation after consultation with her therapist.  This includes going to or loitering near areas frequented by children, including, but not limited to, parks, playgrounds, swimming pools, amusement parks, and arcades. [¶] This also includes residing with any person under the age of 18, including her own children, stepchildren, or relatives."

Appellant argues the first sentence of this condition is overbroad because she "could be in contact with minors when attending a church service, using public transportation, eating at a fast-food restaurant, shopping at Target or a grocery store, or while engaging in other normal day-to-day activities."  She argues the condition should be limited to locations that are "exclusively targeted at minors."  The People argue the condition is not overbroad because "to 'remain,' 'loiter,' and 'contact' a minor clearly describe appellant's knowing, intentional, and unnecessary interaction with a minor . . . .  It is unlikely and unreasonable to conclude that appellant would be punished arbitrarily for standing in line and, due to circumstances beyond her control, a minor were to get in line behind her."  The People's argument is unpersuasive.  On its face, the condition prohibits appellant from remaining in any location when minors are present.  There is no limitation on whether the location is one frequented by children, whether other adults are present,

14

or any specific distance from minors at which appellant may remain. As written, the condition covers a wide range of frequently occurring scenarios that would pose little risk to those minors in appellant's general vicinity. Moreover, the condition does not require that appellant know or reasonably should know that a person nearby is under 18 years old.

We will strike the first sentence of the condition and remand for the trial court to impose a narrower condition tailored to the legitimate interest in preventing appellant from engaging in inappropriate behaviors with minors. Appellant did not raise specific challenges to the second two sentences of the condition, but we will modify them for clarity and to add a knowledge component: "The defendant shall not go to or loiter near areas that she knows or reasonably should know are frequented by children, including, but not limited to, parks, playgrounds, swimming pools, amusement parks, and arcades. The defendant also shall not reside with any person who she knows or reasonably should know is under the age of 18, including her own children, stepchildren, or relatives."

C.    *Costumes*

Appellant challenges a condition providing that "[s]he shall not wear or possess, purchase, or have access to costumes, masks, or other identity concealing items. "

Appellant argues the condition is not reasonably related to her future criminality because her case did not involve her concealing her identity. We agree with the People that the condition supports enforcement of other conditions, including the no-contact order protecting the victims.

However, we agree with appellant that the condition is unconstitutionally vague because the phrase "other identity concealing items" could include a broad range of common apparel including sunglasses and

15

hats.  The People concede the condition should be modified and propose the following: " 'The defendant shall not wear, possess, purchase or have access to costumes, masks, or other items designed to conceal or obscure her identity, or us[e] any such item to knowingly obscure or conceal her identity, without prior approval of the probation officer and therapist.' "  In her reply brief, appellant expresses no concerns with this modification.  We agree with the People that it addresses the constitutional issues, and will direct the trial court to so modify the condition.

D.    *Toys*

Appellant challenges a condition providing that she "shall not own, use, or possess any type of toys, stuffed animals, video games, or similar items designed for the entertainment of children unless recommended by her therapist and approved in writing by her probation officer."

Appellant argues the condition is unreasonable because her case "did not involve predatory behavior by way of luring children with toys."  We disagree.  The condition is reasonably related to preventing appellant from engaging in inappropriate sexual conduct with minors.

However, we agree with appellant and the People that the condition is vague because it is unclear whether it encompasses a wide variety of items regularly used by adults as well as children, such as puzzles and sports equipment.  We will strike the condition and remand for the trial court to impose a clearer prohibition.

E.    *Sexual Arousal Items*

Appellant's final challenge is to a condition directing that she "[s]hall not possess or access any pre-recorded or live materials, or other items, in any medium including, but not limited to photographs, paintings, drawings, literature, documents, television, satellite, cable services, pay-per-view,

16

telephone services, texts, audiotapes, CDs, DVDs, Blu[-r]ay player or digitally stored materials on the internet, computers, electronic data storage devices, or other electronic sources[] that may be used for the purpose of sexual arousal or stimulation (including, but not limited to, pornographic material)." (Boldface omitted.) The condition also provides appellant shall not "frequent any establishment where you know or reasonably should know such items are viewed or sold . . . ." (Boldface omitted.)

Appellant argues the condition is unreasonable, overbroad, and vague. The People concede the condition is vague, and we agree. "There appears a general consensus among courts . . . that the terms 'pornographic' and 'pornography,' standing by themselves, are subjective and vague. [Citations.] As one court observed, the term 'pornography' could conceivably encompass many well-known works of artistic and cultural significance featuring nudity or sexually explicit material." (*People v. Gruis* (2023) 94 Cal.App.5th 19, 23–24 (*Gruis*).) The phrase "may be used for the purpose of sexual arousal or stimulation" is even more subjective and ill-defined than the term "pornography."

In contrast, a condition that prohibited the use or possession of " 'any materials or items that have a primary purpose of causing sexual arousal, including computer based movies, videos, magazines, books, games, sexual aids or devices,' " was upheld against a vagueness challenge. (*In re David C.* (2020) 47 Cal.App.5th 657, 666–667.) The Court of Appeal reasoned that "the phrase 'primary purpose of causing sexual arousal' is a sufficiently clear standard that will in almost all cases allow [the party subject to the condition] to readily determine whether materials are prohibited." (*Id.* at p. 667.)

Accordingly, we will strike the condition.  On remand, the trial court may impose a condition consistent with this opinion, in particular, omitting any reference to pornography or pornographic material and including a clarification that the prohibited material has the primary purpose of causing sexual arousal.  Such a condition would appear to avoid the reasonableness and overbreadth concerns raised by appellant, but appellant "remains free on remand to raise any overbreadth [or reasonableness] objections . . . to any modified version of the [stricken] condition."  (*Gruis*, *supra*, 94 Cal.App.5th at p. 26, fn. 5.)

DISPOSITION

The probation conditions imposed by the trial court are stricken or modified as follows:

(1) The Internet Condition, Device Condition, and Social Media Condition are stricken.  On remand, the trial court may impose narrower conditions consistent with this opinion.

(2) The first sentence of the condition prohibiting remaining in the presence of any person under 18 years old is stricken.  On remand, the trial court may impose a narrower condition consistent with this opinion.  Unless and until the trial court imposes such a narrower condition, the second two sentences of this condition are modified to read as follows: "The defendant shall not go to or loiter near areas that she knows or reasonably should know are frequented by children, including, but not limited to, parks, playgrounds, swimming pools, amusement parks, and arcades.  The defendant also shall not reside with any person who she knows or reasonably should know is under the age of 18, including her own children, stepchildren, or relatives."

(3) The condition governing costumes is modified to read: "The defendant shall not wear, possess, purchase or have access to costumes,

18

masks, or other items designed to conceal or obscure her identity, or use any such item to knowingly obscure or conceal her identity, without prior approval of the probation officer and therapist."

(4) The condition governing toys is stricken. On remand, the trial court may impose a clearer condition consistent with this opinion.

(5) The condition regarding items that may cause sexual arousal is stricken. On remand, the trial court may impose a clearer condition consistent with this opinion.

In all other respects, the judgment is affirmed.

SIMONS, J.

We concur.

JACKSON, P. J.
BURNS, J.

(A171147)

19